HE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| THE WHITE FAMILY COMPANIES, INC., et al., | : : | |
| Appellants/Cross-Appellees, | : | Case No. 3:01cv481 |
| vs. | : | JUDGE WALTER HERBERT RICE |
| DAYTON TITLE AGENCY, INC., | : | |
| Appellee, | : | |
| NATIONAL CITY BANK, | : | |
| Appellee/Cross-Appellant. | : | |

DECISION AND ENTRY AFFIRMING IN PART AND REVERSING IN
PART JUDGMENT OF THE UNITED STATES BANKRUPTCY COURT;
JUDGMENT TO BE ENTERED ACCORDINGLY; TERMINATION ENTRY

This bankruptcy appeal stems from an adversary proceeding in the

bankruptcy of Appellee Dayton Title Agency, Inc ("DTA"). DTA and Appellee/

Cross-Appellant National City Bank ("NCB") initiated that adversary proceeding

against Appellant/Cross-Appellee White Family Companies, Inc. ("White"), and

Appellant/Cross-Appellee Nelson Wenrick ("Wenrick"). DTA and NCB sought to

recover $4,885,000.00 from White and Wenrick, principally under the theory that

the latter two were the recipients of a fraudulent conveyance in violation of Ohio's

Uniform Fraudulent Transfer Act ("UFTA"), § 1336.01, et seq., of the Ohio

Revised Code. NCB also set forth a claim of unjust enrichment under the common

law of Ohio. These claims arise out of bridge loans from White and Wenrick to

Krishan Chari ("Chari"), a valued customer of DTA and would be real estate

tycoon, and his entity, The Chari Group, Ltd.[1] The loans were made with DTA

acting as closing agent and using its trust account at NCB. DTA was owned

equally by two shareholders, Alex Katona ("Katona") and Brenda Rupert ("Rupert").

Rupert was Chari's primary contact at DTA.[2]

This is the third iteration of this appeal. During the first, this Court wrote:

> The adversary proceeding was initiated by DTA ... and National City
> Bank ("NCB") against the Appellants/Cross–Appellees, The White Family
> Companies, Inc. ("White"), and Nelson D. Wenrick ("Wenrick"). DTA, and
> NCB requested that the Bankruptcy Court set aside, as fraudulent under §
> 1336.04 of the Ohio Revised Code and preferential under 11 U.S.C. § 548,
> transfers of $3,260,000, and $1,625,000 to White and Wenrick,
> respectively.
>
> \* \* \*
>
> In his Decision of May 15, 2001, Bankruptcy Judge William Clark
> summarized the facts and circumstances giving rise to the adversary
> proceedings:
>
>> Beginning in November of 1998, Dayton Title experienced
>> difficulties collecting funds from Chari to cover disbursements made at

---

[1]Both Chari and his related entity were forced into bankruptcy in 1999. Chari later
plead no contest and was convicted in the Montgomery County Common Pleas
Court of 36 counts of racketeering, fraud and forgery relating to his real estate
ventures and his work as a real estate agent. He was sentenced to eight years of
incarceration. In addition, Chari entered a guilty plea to one count of fraud and
was sentenced to an additional year of incarceration in a prosecution in this Court.
See United States v. Chari, Case No. CR-3-01-030.

Chari also interacted with DTA through Invesco, a real estate investment
concern consisting of himself and Michael Karaman, who has appeared as amicus
curiae in this appeal.

[2]Throughout the proceedings before the Bankruptcy Court, Rupert, citing her rights
under the Fifth Amendment, refused to answer questions concerning Chari's
activities with DTA's trust account.

his direction through the trust accounts. In at least one transaction, Dayton Title disbursed funds on behalf of Chari before Chari made a deposit into its account. Adv.Doc. # 129–1, Ex. 3. In connection with this same transaction and many others, Chari's checks were returned for insufficient funds. Id., Exs. 3, 5, 11–18, 20–21, 23–24. Some of the bounced checks resulted in substantial overdrafts in a Dayton Title trust account. Adv.Doc. # 130–1, Ex. 70 at NCB 00277 and Adv.Doc. # 131–1, Ex. 71 at NCB 00255.

At the present center of the dispute are transactions conducted at Chari's direction through one of Dayton Title's trust accounts with National City Bank involving Chari's real estate investment enterprise, Invesco, LLC. Folino Depo., pp. 27–28. Invesco was run by Chari and his partner Michael Karaman. Id. Beginning in December of 1998, two separate entities, the White Family Companies, Inc. ["White"], and Nelson Wenrick ("Wenrick") provided short term financing, called bridge loans, to Invesco for purported real estate transactions. Adv.Doc. # 52–1, Depo. of Timothy White ("White Depo."), pp. 28–30; Adv.Doc. # 53–1, Depo. of Nelson Wenrick ("Wenrick Depo."), pp. 14–29. The purpose of the loans, each involving over one million dollars, was to facilitate Invesco in the purchase of commercial real estate for attractive prices. White Depo., p. 30; Adv.Doc. # 132–1, Ex. 95. The duration of each loan was only 30 or 45 days, long enough for Invesco to procure permanent financing. Adv.Doc. # 90–1, Depo. of Dave Alexander ("Alexander Depo."), p. 148; White Depo., pp. 30, 34–36; Wenrick Depo., p. 29. These loan transactions were usually closed at Dayton Title's facilities (Alexander Depo., pp. 34–35, 53, 68, 87–88, 101, 113; Wenrick Depo., p. 16) and were evidenced by notes signed by Michael Karaman on behalf of Invesco. Adv.Doc. # 132–1, Ex. 95. Each note carried a second signature of Michael Karaman as personal guarantor. Id.

Between December 1, 1998 and July 12, 1999, WFC [White Family Companies] made five bridge loans to Invesco ranging from $1,900,000.00 to $3,200,000.00. Id. In a completely separate transaction, Wenrick furnished a $1,200,000.00 bridge loan to Invesco on August 4, 1999. Id. Each loan transaction was carried out by the lender depositing the funds into one of Dayton Title's accounts. Adv.Doc. # 132–1, Exs. 99–103, 105. These loans were paid back in [full], but not always before the due dates. Adv.Doc. # 132–1, Ex. 95; Adv.Doc. # 103–1, Exs. G, N, T, AA, GG; Wenrick Depo., pp. 235–236.

On September 3, 1999, WFC and Wenrick each provided a final bridge loan to Invesco of $3,200,000.00 and $1,600,000.00 respectively. Adv.Doc. # 132, Ex. 95. The loans were made in

connection with the supposed purchase of property containing a Staples retail office supply store. Wenrick Depo., pp. 242-244; White Depo., pp. 144-145. Like the previous loans, these were evidenced by notes containing Michael Karaman's signature as President of Invesco and a second signature of Michael Karaman as personal guarantor of the loans. Adv.Doc. # 132-1, Ex. 95. According to the notes, Invesco was to repay the principal and interest on the short-term loans on or before October 3, 1999. Id.

Soon after the loans were past due, WFC and Wenrick were repaid with checks drawn on a Texas IOLTA account of John Lewis. Adv.Doc. # 103-1, Ex. OO; Alexander Depo., pp. 118-119; Wenrick Depo. pp. 24-25. Both checks were returned for insufficient funds. Wenrick Depo. pp. 24-25; Alexander Depo., pp. 122-123.

Subsequently, on October 19, 1999, Krishan Chari had a $5,000,000.00 check deposited into Dayton Title's trust account with National City Bank for the purpose of paying WFC and Wenrick. Adv.Doc. # 99-1, App. A, Ans. to Interrog. 3(c); Adv.Doc. # 132-1, Exs. 97 and 98. The check was purportedly drawn on a DCW Investments account at Oak Hill Bank. Id. The teller at National City Bank did not place a hold on the check Chari deposited. Adv.Doc. # 132-1, Ex. 109. On that same day, pursuant to Chari's instructions, Dayton Title issued a check payable to WFC in the amount of $3,260,000.00 and a check payable to Wenrick in the amount of $1,625,000.00 from the trust account. Adv.Doc. # 103-1, Ex. 2, Affidavit of Pam Folino ("Folino Aff."), ¶ 4; Adv.Doc. # 132-1, Ex. 111. The remaining $115,000.00 from Chari's $5,000,000.00 check was to remain in Dayton Title's trust account for fees payable to Dayton Title for unrelated transactions. Folino Aff., ¶ 4.

On October 20, 1999, Tim White presented the WFC check to a teller at National City Bank and obtained an official bank check in return. White Depo., pp. 154-155; Adv.Doc. # 99-1, App. A., Ans. to Interrog. 3(a). Wenrick deposited his check in an account at Security National Bank. Wenrick Depo., pp. 39-45. Wenrick's check cleared the trust account at National City Bank on October 25, 1999. Adv.Doc. # 99-1, App. A., Ans. to Interrog. 3(b).

On or about October 26, 1999, National City Bank received notification that the check deposited by Chari in Dayton Title's trust account was being returned. Adv.Doc. # 132-1, Ex. 97. However, WFC and Wenrick's checks were honored by National City Bank prior to the bank's discovery that Chari's check was a forgery drawn on a non-existent account. Adv.Doc. # 99-1, App. A, Ans. to Interrog. 3(a) through 3(c), 5 and 6. Chari deposited two subsequent $5,000,000.00 checks into Dayton Title's trust account which also

> bounced. Adv.Doc. # 131-1, Ex. 79; Adv.Doc. # 132-1, Exs. 97
> and 118. Consequently, National City Bank made the decision to
> freeze Dayton Title's accounts on November 4, 1999. Adv.Doc.
> # 132-1, Ex. 119.
>
> Because Chari's checks were returned, the funds in Dayton
> Title's trust account did not cover the checks written to WFC and
> Wenrick that were already honored by National City Bank. This chain
> of events caused Dayton Title's trust account to be substantially
> overdrawn. According to an account statement, Dayton Title had a
> negative balance of $4,142,151.38 in the trust account as of
> November 19, 1999. Adv.Doc. # 131-1, Ex. 80][,] indicating that
> approximately $742,848.62 of the funds transferred to WFC and
> Wenrick represent money that had been in Dayton Title's trust
> account at the time of the conveyance. No party disputes that the
> funds in the account represent third party escrow funds held in trust
> by Dayton Title. Adv.Doc. # 129-1, Ex. 2; Folino Depo., pp. 17-18.
> In re Dayton Title Agency, Inc., 262 B.R. 719, 723-25 (Bkrtcy.
> S.D.Ohio 2001).

White Family Companies v. Dayton Title Agency, Inc. 284 BR 238, 241-43 (S.D.

Ohio 2002) (footnotes omitted).

Based upon the foregoing, Judge Clark concluded that DTA was entitled to

summary judgment on its fraudulent conveyance claim under Ohio's UFTA and that

White and Wenrick were not entitled to same. That judicial officer overruled NCB's

motion seeking summary judgment, without otherwise resolving its claims. White

and Wenrick appealed to this Court. After the parties had extensively briefed the

issues raised in the appeal,[3] this Court entered an Opinion on September 27, 2002,

in which it affirmed in part, vacated in part and remanded the matter to the United

States Bankruptcy Court. See White Family Companies v. Dayton Title Agency,

Inc. 284 BR 238 (S.D. Ohio 2002) (Doc. #38).[4] The purpose of the remand was to

---

[3]See Docs. ##16, 18, 22-25, 28, 30.

[4]Throughout this Decision, the Court uses "Doc." to delineate papers filed in this
appeal, and "Adv. Doc." for documents filed during the adversary proceeding in the

permit the Bankruptcy Court to consider a then recent decision by the Sixth Circuit in Stevenson v. J.C. Bradford & Co.(In re Cannon), 277 F.3d 838 (6th Cir. 2002).

On remand, Judge Clark principally concluded that the decision of the Sixth Circuit in Cannon did not alter his conclusion that DTA was entitled to summary judgment on the claim under the UFTA. See In re Dayton Title Agency, 292 B.R. 857 (Bkrtcy. S.D.Ohio 2003). Judge Clark wrote that he had previously concluded that the funds transferred from DTA's trust account to White and Wenrick constituted property of DTA's bankruptcy estate, "because [DTA] exerted control over the escrow funds and used them for a purpose other than that intended by the third parties. Furthermore, the transfers diminished assets available for distribution to creditors of the estate." Id. at 863. Judge Clark did, however, hold that a portion of the funds that were in DTA's trust account at NCB were not property of DTA's bankruptcy estate and, thus, granted summary judgment to White and Wenrick on that portion of DTA's claim. He explained:

No party disputes that $722,101.49 of the $742,848.62 existing in the trust account at the time of the transfers to Defendants WFC and Wenrick were third party funds held by Dayton Title. Upon examination under Ohio law, the court concludes that these third party funds in Dayton Title's trust account at the time of the transfers to WFC and Wenrick meet the definition of an express trust. Dayton Title created its primary escrow account to set aside and preserve third party money to facilitate real estate closings. Thus, the intention to create the trust is clear. In addition, no party disputes that Dayton Title held this money not as its own, but as a trustee to apply the money for the benefit of designated parties to real estate transactions. Consequently, the third party funds meet the definition of funds held in express trust for others and, under Cannon, those funds are excluded from Dayton Title's bankruptcy estate. For these reasons, summary judgment must be granted to WFC and Wenrick with regard to the third party funds, totaling $722,101.49, that were held by Dayton Title in its escrow account at the time of the transfers.

Bankruptcy Court.

- 6 -

Id. at 869-70 (footnotes omitted). Nevertheless, Judge Clark concluded that the remainder transferred to White and Wenrick (the $20,747.13) was property of DTA's bankruptcy estate and, therefore, subject to DTA's and NCB's claims under the UFTA. That judicial officer also addressed the issue of which party or parties, DTA on one hand, or White and Wenrick on the other, was entitled to that sum of $20,747.13,[5] which had been in DTA's trust or IOLTA account at NCB.[6] After conducting a bench trial on that question, the Bankruptcy Court concluded that those funds belonged to DTA, given that the sum represented fees earned by DTA and that Ohio trust law confirmed the fact that the funds belonged to DTA. See Adv. Doc. #354.

White and Wenrick had also argued in the alternative that, even if the funds in DTA's trust account at NCB did not constitute an express trust, DTA nevertheless held mere legal title to those funds, given that NCB had a security interest in Chari's checks. Judge Clark rejected White's and Wenrick's argument in that regard, explaining:

In response, the Defendants [White and Wenrick] argue that even if the provisional loan was not an express trust, Dayton Title cannot recover the loan proceeds because the proceeds represent the collateral of a fully secured creditor. The Defendants assert that National City's secured status arises by operation of Article 4 of the Uniform Commercial Code, codified by an Ohio statute which provides that a "collecting bank has a security interest in an item ... or the proceeds of the item ...[i]n the case of an item deposited in an account, to the extent to which credit given for the item has been withdrawn or applied ...." Ohio Rev. Code § 1304.20(A)(1) (codifying

[5]The sum of $20,747.13 is the difference between $742,848.62, the amount in DTA's trust account, and $722,101.49, the amount therein which no party claimed were third party funds held in trust by DTA.

[6]DTA also maintained IOLTA or trust accounts at Fifth-Third Bank and First National Bank. This matter involves the trust account which it maintained at NCB.

U.C.C. § 4–210(A)(1)). They argue that under the Sixth Circuit's 2001 decision in First Tennessee Bank, a separate adversary proceeding in the Cannon bankruptcy case, the Article 4 security interest extends to the proceeds of the provisional credit in whatever form those proceeds take. See First Tennessee Bank v. Stevenson (In re Cannon), 237 F.3d 716, 721 (6th Cir. 2001). Because of this security interest, the Defendants argue that Dayton Title had, at best, bare legal title to the proceeds transferred to WFC and Wenrick. Consequently, Dayton Title does not have the power or authority to recover the proceeds on behalf of the secured creditor when the collateral will not be distributed to general unsecured creditors of the estate. See Pioneer Liquidating Corp. v. San Diego Trust & Savings Bank (In re Consolidated Pioneer Mortgage Entities), 211 B.R. 704, 712 (S.D.Cal.1997), partially rev'd on other grounds, 166 F.3d 342, 1999 WL 23156 (9th Cir. Jan 13, 1999).

The court disagrees with the Defendants' argument and concludes that the security interest created by operation of Ohio law is more limited than the Defendants have proposed. The security interest follows the loan proceeds, or other monies, only to the extent that funds remain or are later deposited in a bank account with the collecting bank. See Ohio Rev. Code § 1304.20(B) (explaining the "first in, first out" rule). The limit of National City's security interest is further explained in the bank's Rules for Business Accounts. Rule 13 states that "Depositor grants a security interest in the Account to Bank for any and all indebtedness owed by Depositor to Bank or to Bank's affiliates, however and whenever incurred or evidenced." (See National City's Rules for Business Accounts attached to Proof of Claim # 48) (emphasis added). Since no funds existed in the account at the time of the bankruptcy filing, and the account has now been closed, National City Bank will never realize a security interest in the proceeds of the provisional loan transferred to Defendants WFC and Wenrick, even if those funds are returned to Dayton Title's bankruptcy estate. Instead, National City Bank has an unsecured claim and this status has been admitted by National City Bank in its proof of claim.

Id. at 872-73. Since NCB had asserted only an unsecured claim in the funds,

Judge Clark concluded that its provisional loan had to be treated as any unsecured

loan used by the debtor. Id. at 873.

In sum, on remand, the Bankruptcy Court divided the amount that had been

transferred from the DTA trust account to White and Wenrick, which it concluded

was subject to being set aside as fraudulent under Ohio's UFTA, $4,885,000.00,

into three parts, to wit: 1) $722,101.49, which it referred to as "third-party funds," excluded from DTA's bankruptcy estate and which it concluded was the property of White and Wenrick; 2) $20,747.13, constituting funds in the trust account at the time of the transfer of funds to White and Wenrick which it ultimately determined constituted property of DTA's estate (see Adv. Doc. #354); and 3) $4,142,151.38, which constituted an unsecured provisional loan from NCB to DTA and was part of DTA's bankruptcy estate; therefore, the transfer of that sum of $4,142,151.38 to White and Wenrick would be avoided. See Adv. Doc. #296. Based upon those findings, as well as its initial findings, the Bankruptcy Court concluded that the transfer of the sum of $4,142,151.38 to White and Wenrick was fraudulent and that DTA was entitled to summary judgment under the UFTA against White in the sum of $2,762,814.97, and in the sum of $1,379,336.41 against Wenrick. Id. Once again, however, the Bankruptcy Court did not rule on NCB's claims.

After those proceedings on remand, this matter was once again appealed to this Court.[7] The parties submitted another series of extensive briefs. See Docs. ## 51-53, 58, 60-63, 68-70. This Court, however, did not reach the merits of this appeal. Instead, concluding that jurisdiction was lacking, given that the Bankruptcy Court had failed to dispose of NCB's claims, it remanded this matter to that court, for that specific purpose. See Doc. #76 (dismissing appeal for want of jurisdiction).

_____

[7]The second trip to this Court was initiated by appeals from White, Wenrick and NCB, while the first flowed from Notices of Appeal by DTA, White and Wenrick.

- **9** -

On remand. the Bankruptcy Court resolved that jurisdictional defect, by dismissing NCB's claims as moot. See Adv. Doc. #404. White, Wenrick and NCB have once again appealed this matter to this Court. Although the parties completed briefing the third iteration of this appeal in January, 2005 (see Docs. ## 84, 87-97), this Court has not ruled upon it.[8] As a consequence, this Court afforded the parties and amicus curiae, an additional opportunity to submit memoranda in the appeal.[9] See Doc. #107. The parties and amicus curiae have taken advantage of that opportunity. See Docs. ##109-112. As a means of analysis, this Court will initially rule upon White's and Wenrick's appeals, following which it will turn to NCB's cross appeal.

## I. Appeals of White and Wenrick

White and Wenrick challenge Judge Clark's conclusion that the transfers of $4,142,151.38 and $20,747.13 to them were fraudulent and, thus, could be avoided or set aside. Judge Clark had concluded these sums were property of DTA's bankruptcy estate. As a means of analysis, the Court addresses the parties' arguments pertaining to those two sums in the above order. After it has addressed Judge Clark's decisions on the merits of DTA's claim of fraudulent conveyance under Ohio's UFTA, it will turn to tangential issues raised by Wenrick in his appeal.

---

[8]The Court notes that each successive appeal of this matter has been filed under the case number given to the initial appeal, 3:01cv481. Since that case was marked closed when this Court issued its initial Opinion, affirming in part, vacating in part and remanding this matter, this appeal did not appear on the list of active cases and appeals pending before this Court, thus accounting for a significant part of the delay in rendering this Decision.

[9]The Court had previously permitted NCB to supplement its brief. See Doc. #105.

## A. $4,142,151.38

Broadly speaking, White and Wenrick present two alternative arguments in support of their contention that Judge Clark erred by concluding that the transfer to them of $4,142,151.38 from DTA's trust account at NCB was fraudulent under Ohio's UFTA and by granting summary judgment in favor of DTA on that claim,[10] to wit: the opposite result was mandated by the Sixth Circuit's decision in In re Cannon, supra; and that DTA had, at most, mere legal title to that sum, given that NCB had a security interest in same. As a means of analysis, the Court will address those two assertions in the above order.[11]

### 1. In re Cannon

A central issue for the Court is these appeals is whether the decision of the Sixth Circuit in Cannon mandates the conclusion that the sum of $4,142,151.38, transferred to White and Wenrick from DTA's IOLTA trust account, is not property of DTA's bankruptcy estate.[12] If it was, then it is an asset of that estate, the transfer of which is subject to being set aside as fraudulent, under Ohio's UFTA. If, however, the funds were not property of DTA's bankruptcy estate, their transfer the White and Wenrick is not avoidable (i.e., subject to being set aside or recovered by the bankruptcy estate) under Ohio's statute.

---

[10]This Court reviews the Bankruptcy Court's grant of summary judgment de novo. In re Lewis, 398 F.3d 735, 746 (6th Cir. 2005).

[11]In the following analysis, the Court includes arguments put forward by NCB in support of its appeal.

[12]DTA, like every title insurance agent, maintains its IOLTA, or interest bearing trust account, in accordance with a statutory mandate. See Ohio Rev. Code § 3953.231.

In Cannon, supra, the Sixth Circuit considered whether funds transferred

from the debtor's trust or escrow accounts to a brokerage could be avoided under

11 U.S.C. § 548, as preferential. The debtor, Cannon, had been a Tennessee

attorney, whose practice was limited to real estate closings. He averaged between

120 and 150 closings per month, with between $5,000,000.00, and

$10,000,000.00 flowing through his trust accounts on a monthly basis. At some

point, Cannon began to embezzle funds from his trust accounts,[13] spending some

of the funds he had embezzled trading commodities through a brokerage, J.C.

Bradford & Co. ("Bradford"). During the year before he declared bankruptcy,

Cannon wrote 21 checks on his trust accounts to Bradford, for more than

$1,000,000.00. Cannon's bankruptcy trustee moved to set aside those payments

as preferential, under 11 U.S.C. § 548.[14] The Sixth Circuit rejected the trustee's

efforts in that regard, concluding that the funds in Cannon's trust accounts were

---

[13]After the embezzlement had been discovered, the debtor filed a petition for bankruptcy. He was subsequently disbarred and sentenced to a term of incarceration for his theft.

[14]Unlike Cannon, this matter arises under Ohio's UFTA, Ohio Rev. Code § 1336.01, et seq., rather than under the preferential transfer provision of the Bankruptcy Code, 11 U.S.C. § 548. However, it is recognized that the "fraudulent transfer provisions of the Code [§ 548] and the Ohio [UFTA Ohio Rev. Code § 1336.01, et seq.] are substantially similar both in terms of rights, remedies, and defenses." In re Grove-Merritt, 406 B.R. 778, 789 (Bankr. S.D.Ohio 2009). Notably, both § 548 and the Ohio UFTA, relied upon herein, empower someone to avoid any transfer of an interest of the debtor's property, when that transfer is fraudulent, as defined by the statutes. See Ohio Rev. Code § 1336.01(L) (defining transfer to include "every direct or indirect, absolute or conditional, and voluntary or involuntary method of disposing of or parting with an asset or an interest in an asset"); Ohio Rev. Code § 1336.01(B) (defining "asset" a property of the debtor); In re Ohio Business Machines, 2007 WL 177941 (BAP 6th Cir. 2007) (noting that an asset means "property of the debtor"); 11 U.S.C. § 548(a)(1) (providing that a "trustee may avoid any transfer ... of an interest of the debtor in property).

- **12** -

not "property of the debtor." The Sixth Circuit began its analysis, by noting that
§ 548 provides that a trustee may avoid or set aside any transfer of an interest of
the debtor in property that is fraudulent under the statute. 277 F.3d at 849.
Although the Bankruptcy Code does not define "property of the debtor," the Sixth
Circuit recognized that 11 U.S.C. § 541 defines "property of the estate" broadly
and applied that definition to determine whether the money in Cannon's trust
accounts constituted "property of the debtor." Id. Based upon Supreme Court
authority, Begier v. IRS, 496 U.S. 53 (1990), the Sixth Circuit concluded that
property which a debtor holds in an express trust for another is not "property of
the estate" and, thus, not "property of the debtor."[15] Id. The Sixth Circuit then
examined Tennessee law, concluding that the money in Cannon's trust accounts
was held in an express trust for others. In reaching that conclusion, the
Cannon court noted that "[s]tate law determines whether funds held in escrow
constitute an express trust excluded from the debtor's estate."[16] Id. at 849-50.
As a result, the Cannon court concluded that the money which Cannon had
transferred from his trust accounts to Bradford was not his property and not
subject to the trustee's avoidance (or recovery) powers under § 548. Of particular
present pertinence is the Sixth Circuit's conclusion that $1,137,500 in Cannon's
trust accounts was not property of his bankruptcy estate, even though that sum

---

[15]In Begier, the Supreme Court interpreted § 541, as including in a debtor's estate
"that property that would have been part of the estate had it not been transferred
before the commencement of the bankruptcy proceedings," while acknowledging
that "the debtor does not own an equitable interest in property he holds in trust for
another[; therefore], that interest is not 'property of the estate.'" 496 U.S. at 59.

[16]Judge Clark acknowledged that principles of Tennessee and Ohio trust law are
similar. 292 B.R. at 869.

was based on provisional credits made as a result of a check kiting scheme. Similarly, herein, NCB made provisional credits to DTA's trust account, based upon the deposit therein of a forged check, written by Chari on a non-existent bank account.

The similarities between this litigation and Cannon are striking. Each case arises out of transfers from the debtor's trust account. Cannon transferred funds from his trust accounts to Bradford, while DTA transferred funds from its IOLTA trust account to White and Wenrick. Like Cannon's trust accounts, DTA's trust account was overdrawn as a result of the transfers. Moreover, like the transfers to Bradford from Cannon's trust accounts, those to White and Wenrick were based upon provisional credits that had been made to the trust account, as a result of criminal behavior, to wit: Chari's act of depositing a forged check written on nonexistent bank accounts into DTA's trust account. Third-parties, the purchasers of real estate, deposited the purchase price in Cannon's trust accounts, which were maintained in accordance with fiduciary duties. Similarly, in accordance with statutory mandate, DTA maintained its IOLTA account for the benefit of third parties, including Chari, his investment fronts (The Chari Group, Ltd. and Invesco) and his third-party investors, such as White and Wenrick. Thus, this Court concludes that Cannon is the controlling authority which must be followed in this matter.

In addition, in Dice v. White Family Cos., 173 Ohio App.3d 472 , 878 N.E.2d 1105 (2007), the Ohio Second District Court of Appeals held that White and Wenrick were not liable under theories of conversion or unjust enrichment, to

- **14** -

third parties who lost funds, as a result of the transfers from DTA's trust account.[17]

Moreover, as to the competent producing cause of the overdrafts from DTA's trust account, throughout their relationship with Chari, DTA and NCB repeatedly ignored their own rules which would have prevented the transfer of funds to White and Wenrick. Indeed, in all likelihood, if DTA and NCB had followed their rules, White and Wenrick would not have invested in Chari's fraudulent real estate scheme, operated under the auspices of DTA and its trust account. As Judge Clark noted, the checks Chari deposited in DTA's trust account at NCB started being returned for insufficient funds in 1998, months before the occurrence of the transactions giving rise to the adversary proceeding and this appeal. The checks that Chari bounced created substantial overdrafts in DTA's trust account. DTA had a rule by which it would not permit disbursements in excess of $100,000 from its trust account, unless supported by cash, a cashier's check or the equivalent. It did not enforce that rule against Chari. Indeed, before the transactions giving rise to this matter, DTA permitted more than $8,000,000 in disbursements at Chari's direction that were in violation of the $100,000 rule. Seventeen Chari related checks deposited in DTA's trust account, totaling over $17 million, were returned as uncollectible.[18] If it had enforced that rule, the transfer of $3,260,000 to White and $1,625,000 to Wenrick would not have

---

[17]The Montgomery County Common Pleas Court granted summary judgment to White and Wenrick on a fraudulent conveyance claim under Ohio's UFTA. That decision was not appealed.

[18]If DTA's and NCB's rules had been enforced against Chari, Wenrick would not have suffered a loss, since he did not make his first bridge loan until long after Chari had been permitted to violate those rules.

- **15** -

occurred. In addition, NCB had a rule, under which it would put a hold on all check deposits of $5,000.00 or more. That rule was not enforced against DTA and Chari's checks. Its enforcement would have prevented the transfers to White and Wenrick at issue herein.

Nevertheless, NCB argues that the funds transferred from DTA's trust account to White and Wenrick can be set aside in accordance with § 1336.03. In particular, NCB contends that the funds in DTA's trust account did not constitute express trust funds, because the trust funds deposited by third-parties were commingled with other funds and, further, given that the evidence raises a genuine issue of material fact as to whether the funds in DTA's IOLTA trust account constituted an express trust. With respect to commingling, this Court cannot agree. The Sixth Circuit rejected a similar argument in Cannon. 277 F.3d at 851 (noting that "when Cannon deposited his own funds, small as they were, into the escrow accounts, he obtained no interest under Tennessee law in the trust corpus that would allow the bankruptcy trustee to avoid the transfers to Bradford as fraudulent").[19]

With respect to NCB's assertion that the evidence raises a genuine issue of material fact as to whether the funds in DTA's trust account were held in an express trust, under Ohio law, "[a]n express trust arises by reason of a manifested intention to create it." Peterson v. Teodosio, 34 Ohio St.2d 161, 172, 297 N.E.2d 113, 120 (1973). In Ulmer v. Fulton, 129 Ohio St. 323, 339-40, 195 N.E. 557,

---

[19]Under Ohio law, the act of a trustee commingling his funds with those of the beneficiary does not destroy the trust; rather, the trustee's funds are subject to being deemed part of the trust. Staley v. Kreinbihl, 152 Ohio St. 315, 322, 89 N.E.2d 593, 597 (1949).

- **16** -

564 (1935), the Ohio Supreme Court discussed the elements which must be

shown to demonstrate the existence of an express trust:

> While its elements have been variously stated to constitute an express trust there must be an explicit declaration of trust, or circumstances which show beyond reasonable doubt that a trust was intended to be created, accompanied with an intention to create a trust, followed by an actual conveyance or transfer of lawful, definite property or estate or interest, made by a person capable of making a transfer thereof, for a definite term, vesting the legal title presently in a person capable of holding it, to hold as trustee for the benefit of a cestui que trust or purpose to which the trust fund is to be applied; or a retention of title by the owner under circumstances which clearly and unequivocally disclose an intent to hold for the use of another.

Id. at 120, 195 N.E. at 564 (internal quotation marks and citation omitted).[20] The

burden of proof now applied by Ohio courts to demonstrate the existence of an

express trust is clear and convincing evidence. See Hill v. Irons, 160 Ohio St. 21,

27, 113 N.E.2d 243, 248 (1953; African Methodist Episcopal Church, Inc. v. St.

Johns African Methodist Episcopal Church of Uhrichsville, Ohio, 2009 WL 795264

(Ohio App. 2009). A fundamental requirement for the establishment of a trust is

separation of legal and equitable interests of the res in the trust, respectively,

between the trustee and beneficiary. In re Estate of Bucknell, 108 Ohio App. 51,

54-55, 160 N.E.2d 550, 553 (1958)

Herein, the evidence fails to raise genuine issues of material fact concerning

the question of whether the funds deposited in DTA's IOLTA trust account at NCB

constituted an express trust.[21] The evidence demonstrates that both NCB and DTA

---

[20]A cestui que trust is the beneficiary of a trust. May v. Copeland, 192 Ohio App.3d 1, 13 n. 4, 947 N.E.2d 1239, 1249 n. 4 (2010).

[21]Indeed, NCB has failed to cite any evidence, raising such genuine issues of material fact.

treated the latter's account with NCB as an IOLTA trust account. For instance, the trust account was expressly created under the Ohio statute regulating IOLTA accounts for title agencies, such as DTA, § 3953.231 of the Ohio Revised Code. Indeed, in December, 1995, DTA wrote to NCB, informing the bank that effective January 1, 1996, the effective date of § 3953.231, its account with NCB would be an IOLTA trust account. Thereafter, the face of each check written on that account bore the legend "I.O.L.T.A." It cannot be questioned that the funds of DTA's customers were deposited in the IOLTA trust account, a separate account from that which DTA used for operating expenses. In addition, DTA held mere legal title to its customers' funds.

Accordingly, the Court concludes that the evidence fails to raise a genuine issue of material fact concerning the question of whether DTA held funds in its IOLTA trust account at NCB, as an express trust for its customers.

Accordingly, based upon the foregoing, this Court concludes that White and Wenrick should have been awarded summary judgment on DTA's claim of fraudulent conveyance under Ohio's UFTA.

### 2. Security Interest

As is indicated, White and Wenrick argue in the alternative that DTA had no more than mere legal title to the funds that were transferred to them from its trust account at NCB, and, therefore, the transfer of those funds to them cannot be avoided or recovered by DTA. In support of this argument, they rely on Ohio Rev. Code § 1304.29(A), UCC § 4-210(a), which provides:

(A) A collecting bank has a security interest in an item and any accompanying documents or the proceeds of the item or documents in any of the following manners:

> (1) In the case of an item deposited in an account, to the extent to which credit given for the item has been withdrawn or applied;

> (2) In the case of an item for which it has given credit available for withdrawal as of right, to the extent of the credit given, whether or not the credit is drawn upon or there is a right of charge-back;

> (3) If it makes an advance on or against the item.

Judge Clark rejected that argument, concluding that NCB was an unsecured creditor, because it failed to file a secured claim in DTA's bankruptcy. This Court does not agree. By operation of law, a collecting bank, such as NCB, is provided a security interest by § 1304.20(A)(1), inter alia, for any "item deposited in an account, to the extent to which credit given for the item has been withdrawn or applied." The security interest created by § 1304.20(A)(1) does not require a security agreement or filing of any sort to be perfected. Moreover, the language of § 1304.20(A)(1) does not in any manner suggest that the existence of the security interest is dependent on the secured party claiming such an interest. Rather, to be faithful to the language of the statute, this Court concludes that, although the failure of NCB to claim a security interest in the funds transferred from DTA's account to White and Wenrick may have prevented NCB from being treated as a secured party in the bankruptcy proceedings, it does not otherwise affect the existence of such a security interest. In other words, although the failure of NCB to claim a security interest could have affected its recovery during DTA's bankruptcy proceedings, NCB nevertheless had a security interest in the funds from

forged checks Chari wrote on a closed account, by operation of law, pursuant to
§ 1304.20(A)(1).

Therefore, this Court agrees with the alternative premise of White and
Wenrick that DTA had nothing more than mere legal title to the funds that were
transferred from its trust account to them, given that NCB had a security interest in
those funds.

Accordingly, based upon the foregoing, this Court concludes that Judge
Clark erroneously entered summary judgment in favor of DTA on its claim under
Ohio's UFTA that the transfer of the sum of $4,142,151.38 to White and Wenrick
from its trust account constituted a fraudulent conveyance and thus could be
avoided or set aside. On the contrary, the Bankruptcy Court should have entered
summary judgment in favor of White and Wenrick on that claim.[22] Consequently,
the Court reverses the judgment of the Bankruptcy Court as it relates to DTA's
claim under Ohio's UFTA for $4,142,151.38, and enters summary judgment in
favor of White and Wenrick on same.[23]

----

[22]Other than the argument that there is a genuine issue of material fact concerning
the existence of an express trust, no party has argued that genuine issues of
material fact prevent the entry of summary judgment in favor of White and
Wenrick, in the event that the entry of summary judgment in favor of DTA were to
be reversed.

[23]As a result of the foregoing, the Court concludes that the assignments of error by
White and Wenrick concerning the award of prejudgment interest on the sum of
$4,142,151.38 and costs are well taken. Since DTA did not prevail on its claim,
there is no judgment upon which to award prejudgment interest. Moreover, given
that DTA was not the prevailing party, it is not entitled to an award of costs.
Accordingly, the Court reverses the judgment of the Bankruptcy Court to the
extent that it awarded DTA prejudgment interest on the sum of $4,142,151.38
and costs.

## B. $20,747.13

As indicated above, Judge Clark, after conducting a bench trial on the matter, concluded that the sum of $20,747.13 was part of DTA's bankruptcy estate and that, therefore, that sum was to be paid by White and Wenrick to the estate in proportion to the sum that each had received from DTA's trust account. Judge Clark also ordered that White and Wenrick pay prejudgment interest on that sum. Both White and Wenrick appeal the holding that the sum of $20,747.13 is part of DTA's bankruptcy estate, as well as the award of prejudgment interest. The Court addresses these two arguments in order. However, before engaging in that analysis, the Court will briefly survey the applicable standard by which it will review the Bankruptcy Court's decision concerning the $20,747.13.

This Court reviews the factual findings of the Bankruptcy Court under the clearly erroneous standard of review. Barlow v. M.J. Waterman & Associates., Inc. (In re M.J. Waterman & Associates., Inc.), 227 F.3d 604, 607 (6th Cir. 2000). "A factual finding will only be clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Rembert v. AT & T Universal Card Services., Inc. (In re Rembert), 141 F.3d 277, 280 (6th Cir. 1998) (citing United States v. Ayen, 997 F.2d 1150, 1152 (6th Cir. 1993)). This Court will review Judge Clark's legal conclusions de novo. In re Parker, 499 F.3d 616, 620 (6th Cir. 2007) (citing In re M.J. Waterman & Associates, Inc., 227 F.3d 604, 607 (6th Cir. 2000)).

---

In addition, the Court overrules, as moot, their assignments of error that genuine issues of material fact on various elements of DTA's claim under the UFTA prevent the entry of summary judgment on its behalf.

As an initial matter, this Court cannot conclude that Judge Clark's finding that the $20,747.13 represented funds owed to DTA is clearly erroneous. That finding was based upon a spreadsheet prepared by an audit team from Stewart Title,[24] showing the source of the funds deposited into DTA's trust account (i.e., deposits by banks and purchasers of real estate to be used in real estate transactions), and amount owed by DTA to various individuals. The spreadsheet also showed the fees earned by DTA for its services in connection with real estate closings, including fees for document preparation and title examinations. In addition, DTA presented evidence that it had not received payment for any of its fees from the sums it ultimately wire transferred from its trust account at NCB to its IOLTA account at First National Bank. Indeed, the entire sum so transferred was paid by DTA to third-parties, whose funds were in DTA's trust account.

In accordance with Cannon, this Court must look to Ohio law in order to determine whether the sum of $20,747.13 is indeed part of DTA's bankruptcy estate. Under Ohio trust law, when a trustee commingles his personal funds with trust funds, his personal funds are deemed to be part of the trust, unless the trustee can demonstrate and separate the funds belonging to him. Staley v. Kreinbihl, 152 Ohio St. 315, 322, 89 N.E.2d 593, 597 (1949). Accord, Iron City Sash and Door Co. v. Mohl, 1988 WL 45451 (Ohio App. 1988). Herein, this Court concludes that the Bankruptcy Court's finding that DTA, the trustee, was able to trace the funds that had been commingled is not clearly erroneous. That finding was based, in large measure, on the spreadsheet prepared by Stewart Title.

---

[24]DTA was an agent for Stewart Title. Its customers lost a great deal of money as a result of the bankruptcy of DTA, requiring Stewart Title to indemnify them.

In course of his decision, Judge Clark rejected White's and Wenrick's argument that the evidence failed to demonstrate that any portion of the $20,747.13 was included in the sum of $4,885,000.00 that was paid to them from DTA's trust account. They based that argument primarily upon the fact that the spreadsheet merely demonstrated the amount of fees owed to DTA as of November 3, 1999, after the funds had been transferred from DTA's trust account at NCB to them.[25] In addition, White and Wenrick point out that DTA typically transferred the fees it had earned to itself, upon earning them. While this Court acknowledges, as did Judge Clark, that the spreadsheet does not indicate the date upon which DTA earned a particular fee, it concludes that the Bankruptcy Court did not commit clear error by rejecting that argument.

In addition, Judge Clark rejected the assertion by White and Wenrick that it was presumed that all its funds in the trust account at NCB were included in the sum of $1,660,721.99, which DTA wire transferred out of that account on November 4, 1999. Judge Clark agreed with White and Wenrick as to the existence of such a presumption. See Adv. Doc. #354 at 8 (citing Barrs v. Barrs Rent-A-Car Co., 71 Ohio App. 465, 467, 50 N.E. 388, 389 (1943). That judicial officer found, however, that DTA had overcome that presumption. This Court cannot conclude that this finding was clearly erroneous.

As indicated, Judge Clark ordered that White and Wenrick pay prejudgment interest on the sum of $20,747.13. White and Wenrick contend that the Bankruptcy Court erred in making such an award. This Court reviews the decision

---

[25]The checks drawn on DTA's trust account to White and Wenrick cleared, respectively, on October 20 and 25, 1999.

to award prejudgment interest under an abuse of discretion standard. Anderson v. Whittaker Corp., 894 F.2d 804, 809 (6th Cir. 1990); E.E.O.C. v. Wooster Brush Co. Employees Relief Ass'n, 727 F.2d 566, 579 (6th Cir. 1984). "'A court abuses its discretion when it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard.'" Phelan v. Bell, 8 F.3d 369, 372 (6th Cir. 1993) (quoting Christian Schmidt Brewing Co. v. G. Heileman Brewing Co., 753 F.2d 1354, 1356 (6th Cir. 1985)). An award of prejudgment interest is appropriate when such is necessary to make a plaintiff whole. Thurman v. Yellow Freight Systems, Inc., 90 F.3d 1160, 1170 (6th Cir. 1996). In an action under Title VII, the Sixth Circuit noted that the "time value of the lost money as well as for the effects of inflation." United States v. City of Warren, 138 F.3d 1083, 1096 (6th Cir. 1998). The Sixth Circuit has concluded that a Bankruptcy Court does not abuse its discretion in awarding prejudgment interest in an action involving a preferential transfer, given that the recipient of the preferential payment has had the use of the funds. In re Chattanooga Wholesale Antiques, Inc., 930 F.2d 458, 465 (6th Cir. 1991). See also McLemore v. Third Nat. Bank in Nashville (In re Montgomery), 983 F.2d 1389, 1396 (6th Cir. 1993) (finding no abuse of discretion in the award of prejudgment interest in a preference action); Hunter v. Patton (In re Patton), 200 B.R. 172, 178 (Bankr. N.D. Ohio 1996) (awarding prejudgment interest, despite the good faith dispute over liability); Hale v. Life Insurance Co. of North Am., 750 F.2d 22, 24 (6th Cir. 1986) (noting that "'[t]he award of prejudgment interest is only designed to compensate a plaintiff and is not awarded as a penalty'" (quoting Hiller v. Southern Towing Co., 740 F.2d 583, 585 (7th Cir. 1984) and that "[i]nterest serves to compensate the plaintiff for his inability to use

the money between the date the claim was due, and the date it was paid"). Of course, delays attributable to the plaintiff should be excluded from an award of prejudgment interest. Thurman, 90 F.3d at 1170.

According to White and Wenrick, Judge Clark abused his discretion in awarding prejudgment interest to DTA, because such an award is inappropriate in instances when the defendant has acted innocently, when he did not know that its actions were wrong or when there was a good faith dispute between the parties concerning the defendant's liability. Herein, they assert, they acted innocently and had a good faith defense to DTA's claim for $20,747.13. In support of this argument, White and Wenrick rely on Wickham Contracting, Inc. v. Local Union No. 3, 894 F.2d 831 (2d Cir. 1992).

This Court cannot agree White and Wenrick that decisions such as Wickham Contracting demonstrate that Judge Clark abused his discretion in awarding prejudgment interest. The Sixth Circuit authority causes this Court to conclude that the key factors in an award of prejudgment interest are compensation to the plaintiff and the fact that the defendant has had the use of the funds. Herein, both of those factors support Judge Clark's award of prejudgment interest, to wit: the need to make DTA whole and the fact that White and Wenrick have had the use of the $20,747.13.

Based upon the foregoing, this Court affirms the decision of the Bankruptcy Court that the sum of $20,747.13 was property of DTA's estate which White and Wenrick were required to disgorge, as well as the award of prejudgment interest.

- 25 -

## C. Miscellaneous Issues

In addition to the foregoing issues, Wenrick raises a number of miscellaneous issues.

First, Wenrick argues that the Bankruptcy Court erred in failing to impose sanctions on DTA, NCB and/or the attorneys representing them in its decision of February 13, 2003. Wenrick sought an award of sanctions in accordance with Bankruptcy Rule 9011,[26] asserting that DTA, NCB and/or their counsel violated that provision by opposing their requests to release the supersedeas bond after this Court had vacated the initial award of summary judgment, as a result of which there existed no final judgment to stay. This Court reviews the decision of the Bankruptcy Court to decline to award the requested sanctions under an abuse of discretion standard. Jones v. Illinois Central Ry. Co., 617 F.3d 843, 850 (6th Cir. 2010) (reiterating that the Sixth Circuit reviews the decision of the District Court to award sanctions under Rule 11 under an abuse of discretion standard).

The Docket Sheet of the Adversary Proceedings identifies Judge Clark's decision of February 13, 2003, as Adv. Doc. #287. That document is not, however, part of the record on appeal in this matter. This Court is unable to review this assignment of error since Wenrick, the Appellant, neglected to include Judge Clark's decision in the record on appeal. Hicks v. Floyd County Bd. of Ed., 99 Fed Appx. 603, 605-06 (6th Cir. 2004) (holding that it could not review the District Court's rulings on the admissibility of exhibits, since they were not included

---

[26]Because of the similarity between Rule 9011 and Rule 11 of the Federal Rules of Civil Procedure, the determinations necessary to support an award of sanctions under Rule 9011 are the same as those required to support such an award under Rule 11.

- **26** -

in the record on appeal). See also United States v. Johnson, 584 F.2d 148, 156 n. 18 (6th Cir. 1978).

Accordingly, this Court overrules Wenrick's assignment of error arising out of Judge Clark's refusal to award sanctions.

Second, Wenrick contends that the Bankruptcy Court erred in denying his request in limine to prevent NCB from introducing evidence that DTA had an ownership interest in the sum of $20,747.13. According to Wenrick, DTA was precluded from introducing such evidence on the grounds of waiver, judicial estoppel, equitable estoppel, collateral estoppel and Rule 403 of the Federal Rules of Evidence. Wenrick states that Judge Clark overruled his motion in limine at trial.[27] Wenrick has not, however, identified the location where, in the massive record of this matter on appeal, the portion of the transcript of that judicial officer's oral decision may be found. That is the functional equivalent to neglecting to include said portion of the transcript in the record. Therefore, based upon the above reasoning, this Court concludes that it cannot review this assignment of error. Accordingly, the Court overrules Wenrick's assignment of error arising out of the Bankruptcy Court's overruling his motion in limine.[28]

---

[27]The trial was held on the same day that Wenrick filed that motion, June 25, 2003.

[28]Parenthetically, this Court would have been hard pressed to conclude that Judge Clark abused his discretion in overruling Wenrick's Motion in Limine, even if the record permitted it to address that issue. With that motion, filed on the day the trial commenced, Wenrick in essence argued that, since the evidence failed to raise a genuine issue of material fact on its defenses of waiver, judicial estoppel, equitable estoppel, collateral estoppel, evidence concerning the $20,747.13 must be excluded. This Court cannot conceive that it is an abuse of discretion to overrule what is in effect a motion for summary judgment, filed on the morning of trial.

- 27 -

## II. NCB's Cross Appeal

NCB set forth claims of unjust enrichment and under the Ohio's UFTA against Wenrick and White. The Bankruptcy Court Clark dismissed those claims as moot. See Adv. Doc. #404. With its cross appeal, NCB argues that Judge Clark erred in so dismissing its claims. As part of its appeal, NCB argues that the Bankruptcy Court erroneously concluded that White and Wenrick were entitled to summary judgment on their claims that the sum of $722,101.49 was excluded from DTA's bankruptcy estate, and, as a result, its transfer to White and Wenrick was not subject to being avoided under Ohio's UFTA. In light of the Court's conclusion that judgment entered in favor of DTA in the sum of $4,142,151.38 must be reversed, this Court agrees with NCB that its claims are not moot. Nevertheless, the Court concludes that it must affirm the judgment of the Bankruptcy Court, albeit based upon different reasoning.[29] As a means of analysis, the Court address NCB's claims under the Ohio statute, before turning to its claims of unjust enrichment.

## A. NCB's Claims against White and Wenrick under Ohio's UFTA

For reasons which follow, this Court concludes that NCB cannot, as a matter of law, prevail on its claim under Ohio's UFTA. Initially, a creditor has standing to bring a fraudulent conveyance action in a bankruptcy proceeding, only when the trustee or debtor in possession, which exercises the power of a trustee (see 11

---

[29]It is axiomatic that an appellate court may affirm on any grounds supported by the record, even if different than those cited by the District Court. See United States v. Howard, 621 F.3d 433, 457 (6th Cir. 2010).

U.S.C. § 1107(a)), has failed to initiate such an action. In re Gibson, 66 F.3d 1436 (6th Cir. 1995); In re Ontos, Inc., 478 F.3d 427, 431 (1st Cir.), cert. denied, 552 U.S. 823 (2007). Herein, DTA, the debtor in possession, initiated a fraudulent conveyance action against White and Wenrick. Therefore, NCB lacks standing to bring such an action, and, for that reason alone, Judge Clark was correct to dismiss NCB's claim, although for different reasons.

In addition, based upon Cannon and Article 4 of the UCC, i.e., § 1304.20(A), this Court has concluded above that DTA cannot prevail on its claim under that statute, given that the amount transferred to White and Wenrick was not property of DTA's bankruptcy estate. The Court's conclusion in that regard would be is equally applicable to NCB's claim under the Ohio statute, if it had standing to assert such a claim.[30] It bears emphasis that regardless of whether the debtor or a creditor is attempting to avoid the transaction, there must have been a "transfer," which is defined to include "every direct or indirect, absolute or conditional, and voluntary or involuntary method of disposing of or parting with an asset or an interest in an asset." Ohio Rev. Code § 1336.01(L). The term "asset," in turn, is defined as property of the debtor. Ohio Rev. Code § 1336.01(B). Since the sum transferred to White and Wenrick, $4,885,000.00, less the $20,747.13, was not property of DTA, under Cannon and § 1304.20(A), it was not an asset, and a transfer under Ohio's UFTA did not occur.

---

[30]Above, the Court rejects NCB's assertions that DTA's account was not an IOLTA trust account and that the funds therein were not held in trust, as a result of commingling. See supra, at 16.

- **29** -

Therefore, based upon the above reasoning, this Court concludes that Judge Clark correctly dismissed the claim of NCB under Ohio's UFTA.

Turning to NCB's claims of unjust enrichment against White and Wenrick, in Dice, supra, the Montgomery County Court of Appeals held that third parties who had lost money that had been in DTA's trust account, before the funds therein had been transferred from that account to White and Wenrick, could not assert claims of unjust enrichment against them, because they (White and Wenrick) were holders in due course under § 3-302 of he UCC, § 1303.32 of the Ohio Revised Code. It bears emphasis that this matter and Dice arise out of the same transaction and are based upon identical facts and circumstances. Since NCB was not a party to the Dice litigation, principles of issue and claim preclusion do not prevent NCB from litigating a claim of unjust enrichment predicated upon the same facts and circumstances as Dice. However, under Erie Railroad Company v. Tompkins, 304 U.S. 64 (1938),[31] this Court is obligated to apply the law of Ohio in order to resolve NCB's state law claim of unjust enrichment.[32] Under the identical set of facts and circumstances and arising out of the same transaction, the Montgomery

---

[31]In Erie, the Court held that "[e]xcept in matters governed by the Federal Constitution or by Acts of Congress, the law to be applied in any case is the law of the State" and that "[t]here is no general federal common law." 304 U.S. at 78. Courts have applied Erie in bankruptcy proceedings involving state law claims. See e.g., In re Icarus Holding, LLC, 391 F.3d 1315 (11th Cir. 2004).

[32]Under Erie, this Court "must follow the decisions of intermediate state courts in the absence of convincing evidence that the highest court of the state would decide differently." Stoner v. New York Life Ins. Co., 311 U.S. 464, 467 (1940). See also Birgel v. Board of Commissioners, 125 F.3d 948, 951 (6th Cir. 1997) (noting that a federal court is "bound to apply the decisions of the state appellate court" in the absence of evidence that the state Supreme Court would rule otherwise). Herein, no such evidence exists.

County Court of Appeals held in Dice that individuals, who like NCB, had suffered a loss as a result of the withdrawal of funds from DTA's trust account at NCB, could not recover from White and Wenrick under an unjust enrichment theory. Given that this matter and Dice arise out of the same set of uncontroverted facts,[33] the liability of White and Wenrick on NCB's claim of unjust enrichment becomes a question of law. If the Bankruptcy Court were to resolve that question of law in a manner that is contrary to that reached by the state court in Dice, it would violate the underlying premise of Erie that state law is to be applied in any matter not arising under the federal constitution and statutes. NCB's claim of unjust enrichment most decidedly does not arise under either.

Accordingly, this Court affirms the dismissal of NCB's claim of unjust enrichment against White and Wenrick, although based upon different reasoning than that relied upon by the Bankruptcy Court.[34]

---

[33]Herein, while granting summary judgment to DTA and NCB, the Bankruptcy Court concluded that there was no genuine issue of material fact concerning the transaction, the facts and the circumstances giving rise to this litigation. In a consistent fashion, the Dice court held that none of those questions raised a genuine issue of material fact and that summary judgment should be entered in favor of White and Wenrick.

[34]NCB also argues that the Bankruptcy Court erred in concluding that White and Wenrick were entitled to the sum of $722,101.49, because those funds will be necessary to make it (NCB) whole. Given that this Court has concluded that neither DTA nor NCB can recover under any asserted theory from White and Wenrick, NCB is not going to be made whole, regardless of the propriety of Judge Clark's grant of summary judgment in favor of White and Wenrick for the sum of $722,101.49.

In sum, this Court affirms the judgment of the Bankruptcy Court to dismiss NCB's claims against White and Wenrick, albeit for reasons different than that relied upon by the Bankruptcy Court.

Based upon all of the foregoing, this Court affirms in part and reverses in part the judgment of the Bankruptcy Court. The Court reverses that judgment as it relates to the award of $4,142,151.38, plus prejudgment interest and costs, to DTA on DTA's claim, under Ohio's UFTA, to avoid the transfer of that sum to White and Wenrick. The Court directs that judgment be entered in favor of White and Wenrick on that claim. Otherwise this Court affirms the judgment of the Bankruptcy Court.

Judgment is to enter accordingly.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

February 24, 2012

WALTER HERBERT RICE, JUDGE
UNITED STATES DISTRICT COURT

Copies to:

Counsel of record.

- **32** -